**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SANDRA KIMELMAN**<br>22 Laurel Lane<br>Old Westbury, NY 11568 | CASE NO.17-3977 |
| | JUDGE |
| Plaintiff, | |
| v. | |
| **PHH MORTGAGE CORPORATION** | **VERIFIED**<br>**COMPLAINT** |
| Defendant. | **(Jury Demand Endorsed hereon)** |

Plaintiff, Sandra Kimelman, by and through counsel, and based upon information and belief for her Verified Complaint against Defendant PHH Mortgage Corporation hereby states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Sandra Kimelman ("Plaintiff") or (the "Ms. Kimelman") is the owner of residential real property, located at and commonly known as 22 Laurel Lane, Old Westbury, NY 11568 (the "Home") which she and her family have occupied as their primary principal residence at all times relevant.

2. Defendant PHH Mortgage Corporation, (hereinafter "Defendant" or "PHH") doing business from 1 Mortgage Way, Mount Laurel, NJ 08054 with a registered agent of Corporation Service Company at 80 State Street, Albany, NY 12207, is the current servicer of a Note executed by Plaintiff (the "Note") and of a Mortgage on the Property that secures said Note (the "Mortgage"). Defendant services the Note and Mortgage (collectively referred to hereinafter as the "Loan") on behalf of U.S. Bank National Association ("US Bank").

3.  PHH has been the servicer of the Loan since at least January 1, 2014.

4.  This Court has jurisdiction pursuant to 28 U.S.C. §1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§2601, et seq. (RESPA). This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. §1024.1, et seq. of Regulation X and Defendant by its actions has willfully committed an intentional tort aimed at the Eastern District of New York and the Eastern District of New York is the Jurisdiction where the brunt of the harm was felt.

5.  This Court has supplemental jurisdiction to hear any and all state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. §1367.

6.  Venue lies in this District pursuant to 28 U.S.C. §1391(b), as Plaintiff reside and the Home is located in New York and Defendant by its actions has willfully committed an intentional tort aimed at the Eastern District of New York and the Eastern District of New York is the Jurisdiction where the brunt of the harm was felt and thus Venue in this District is proper.

## INTRODUCTION

7.  Plaintiff restate and incorporate all of her statements and allegations contained in the preceding paragraphs in her entirety, as if fully rewritten herein.

8.  Plaintiff is a mature adult who lives in the property with her eighty-four-year-old husband.

9. The Defendant and her elderly husband missed a single mortgage payment for the January 2014 payment.

10. In February 2014, at the behest of Ms. Kimelman to immediately correct the missed payment she requested that PHH conduct a financial interview, which resulted in an approval for a six (6) month repayment plan (the "Plan") to cure Ms. Kimelman' one (1) delinquent payment.

11. Despite Ms. Kimelman strictly complying with the terms of the Repayment Plan, PHH misapplied Ms. Kimelman' payments, wrongfully applying principal and interest payments to a supposed tax delinquency resulting in Defendant's numerous violations of RESPA and breach of contract claims committed by PHH as set forth in detail herein below.

12. At all times relevant herein, Defendant serviced Plaintiff' mortgage Loan and was responsible to process the Ms. Kimelman' s mortgage payments, all as required in strict accordance with 12 U.S.C. §§2601, et seq. and the Regulations promulgated thereunder.

13. PHH's actions did not meet the minimal standards of conduct for mortgage servicers under the newly-enacted Regulation "X" and PHH has caused Plaintiff to suffer great financial damage, humiliation, suffering, physical stress and emotional distress, further damage to her credit standing, and forced Ms. Kimelman to incur attorneys' fees to obtain a loan modification and to investigate RESPA claims, all of which would have been unnecessary "but for" the willfully and egregious servicing errors and violation committed by PHH, as recounted with greater specificity herein below.

14. In January 2013, the Consumer Financial Protection Bureau (hereinafter "CFPB") issued a number of final rules concerning mortgage markets in the United States, pursuant to the Dodd Frank Act, Public Law No. 111-203, 124 Stat. 1376 (2010).

15. Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

16. The Loan is a "federally related mortgage loan" as such term is defined by 12 C.F.R. §1024.2(b).

17. Defendant is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers" as defined in 12 C.F.R. §1026.41(e)(4) or the exemption for a "qualified lender" as defined in 12 C.F.R. §617.700.

18. Plaintiff is asserting a claim for relief against Defendant for breach of the specific rules under Regulation X as set forth below.

19. Plaintiff has a private right of action for the claimed breaches under RESPA pursuant to 12 U.S.C. §2605(f) and such actions provide for remedies including recompense for actual damages, statutory damages, and Plaintiff's attorney's fees.

## OPERATIVE FACTS FOR
## COUNTS ONE TO SEVEN

20. Plaintiff restates and incorporates all of her statements and allegations contained in the preceding paragraphs in her entirety, as if fully rewritten herein.

21. Ms. Kimelman fell behind on her Loan by one (1) payment in January 2014.

She immediately contacted PHH for assistance, and PHH approved her for a six (6) month repayment plan to cure the one-month arrearage (the "Plan").

22. The Plan provided for six (6) payments totaling $11,043.97, or five (5) payments for $1,840.66 and one (1) payment of $1,840.67.  The Plan repayment period was from March 25, 2014 through August 25, 2014.

23. Ms. Kimelman accepted and agreed to the terms of the Plan.

24. Ms. Kimelman timely made her payments under the Plan for the months of March 2014, April 2014, May 2014, June 2014, July 2014, and August 2014, in satisfaction of her obligations under the Plan.  A copy of the PHH notice dated January 30, 2015, confirming receipt of Plan payments is attached hereto as Plaintiff's **"Exhibit A".**

25. Upon information and belief, around April 4, 2014, PHH erroneously paid, or claimed to have paid, a tax obligation on behalf of Ms. Kimelman in the amount of $3,243.92, setting off a snowballing series of events to Ms. Kimelman' severe detriment and harm. **See "Exhibit A**".

26. As a result of this error, PHH misapplied Ms. Kimelman' April 2014 payment under the Plan, and consequentially, in PHH's own words, "[PHH] erroneously recorded the repayment plan as broken." **See "Exhibit A".**

27. By PHH's own admission while they removed the erroneous late charges and fees, they never corrected the misapplication of the April 2014 mortgage payment to correctly reflect that a full payment was made under the plan that PHH agreed to.  See Plaintiff's **Exhibit "A"'**

5

28. Consequently, because PHH failed to fully correct an error in Ms. Kimelman' s mortgage account at the time it occurred by correcting how the April 2014 payment was credited, each and every monthly mortgage statement and all subsequent payoff and reinstatement letters were in accurate in violation of Regulation X and Regulation Z.

29. On or around June 22, 2016, Ms. Kimelman, through counsel, sent PHH correspondence captioned "Error Resolution Notice under 12 C.F.R. §1024.35" (the "NOE") via USPS Certified Mail (Tracking No.: 7015 3010 0000 0534 6768).  A copy of the NOE attached hereto as Plaintiff' **"Exhibit B".**

30. In the NOE, Ms. Kimelman notified PHH of several errors, including:

    PHH incorrectly charged Ms. Kimelman for property taxes despite Ms. Kimelman having independently remitted timely, full payments for the property taxes since the inception of the loan in 2005.

31. According to USPS Tracking, PHH received the NOE on June 28, 2016.  A copy of USPS Tracking information for the NOE is attached hereto as Plaintiff's **"Exhibit C".**

32. PHH responded to the NOE (the "NOE Response").  A copy of the NOE Response is attached hereto as Plaintiff's **"Exhibit D".**

33. In the NOE response, PHH alleged "[w]hen the taxes became delinquent and the property was ready to go to tax sale, we were forced to pay these taxes to save our interest in the property.  Taxes and penalties were disbursed and the servicer, unbeknownst to the borrowers, opened up escrow accounts for to collect the borrower's taxes and insurance in February 2014." See "**Exhibit D**".

34. However, in direct contradiction to the NOE Response, the county tax payment records during this time period clearly indicate that the only tax payments received for the Home were from "Sandra Kimelman.".  A copy of the county payment tax records is attached hereto as Plaintiff's "**Exhibit E**."

35. PHH caused or otherwise expressly permitted US Bank to file a foreclosure complaint against Ms. Kimelman in the Nassau County Supreme Court captioned or otherwise identified as U.S. Bank v. Martin, Sandra, assigned Index No. 003464/2016 (the "Foreclosure Matter").  A copy of the summons is attached hereto as Plaintiff's "**Exhibit F**".

36. As a result of PHH's erroneous actions, Ms. Kimelman was forced to retain counsel to defend them in the Foreclosure Matter.

37. As a result of PHH's erroneous actions, Ms. Kimelman was further forced to apply for a loan modification with PHH in an attempt to save her family's home.

38. Via correspondence dated December 6, 2016, PHH offered a Loan Modification Agreement to Ms. Kimelman (the "Agreement").  A copy of the Agreement is attached hereto as Plaintiff's "**Exhibit G**."

39. The Agreement provided for monthly principal and interest payments of $2,230.20 (annexed hereto as Plaintiff's **Exhibit "G"**), representing an increase of over $650.00 in her monthly payment under the original terms of the Loan. See Plaintiff's **Exhibit "H"**.

40. Ms. Kimelman was forced to accept the Agreement as the only other option would have been to be rendered homeless.

41. Ms. Kimelman has maintained a homeowner's insurance policy fully insuring her Family Home since at least 2012.  Copies of the Homeowner's Insurance Declaration Pages for the Home are attached hereto as Plaintiff's "**Exhibit I**".

42. Despite Ms. Kimelman maintaining a current insurance policy, PHH has unnecessarily been charging Ms. Kimelman for force-placed insurance for her home despite no necessity to do so.  A copy of the February 2017 Off-Scheduled Escrow Statement from PHH is attached hereto as Plaintiff's "**Exhibit J".**

43. PHH's actions were emblematic of their pattern and practice with regard to her Loan; engaging in the routine misapplication of payments imposition of erroneous and unnecessary escrow charges, all to the Plaintiff's great prejudice and willful infliction of grievous financial damages.

44. If PHH had properly applied the Plan payments in 2014, they would not have erroneously placed charges on Ms. Kimelman' account.

45. Instead, PHH's decision to improperly apply Ms. Kimelman' April 2014 payment to pay taxes that had already been paid by Ms. Kimelman resulted in PHH directly and proximately causing the following damages to Ms. Kimelman too wit:

46. Ms. Kimelman has had to retain legal counsel to defend a frivolous Foreclosure Action commenced by PHH that only became necessary due to PHH's tortious and constant mistakes in servicing Ms. Kimelman' s Mortgage Account and to prepare and submit a Notice of Error to PHH in an effort to have PHH correct its error.

47. Ms. Kimelman has been erroneously and tortiously required to pay for a force-placed insurance policy while at the same time paying for her own Homeowner's policy on the Home.

48. Ms. Kimelman' s monthly principal and interest payment increased by over $650.00 and extended the maturity date of the loan resulting in tens of thousands of dollars in additional payments of principal and interest that will be paid by Ms. Kimelman solely because of PHH's willful and numerous errors which PHH failed to correct.

49. Ms. Kimelman has suffered severe emotional distress, embarrassment and fear caused directly by the prospect of losing her family Home despite her complete compliance with all aspects and obligations of the Loan and the Plan.

50. At the time of the filing of this Complaint, PHH has had more than Seven Hundred Seventy (770) consumer complaints lodged against them nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages and more than Seven Hundred Forty (740) consumer complaints lodged against them nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan servicing, payment, escrow account" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www.consumerfinance.gov/complaintdatabase/).

### COUNT ONE: MULTIPLE VIOLATIONS OF 12 C.F.R. § 1024.37(b)

51. Plaintiff restates and incorporates all of her statements and allegations contained in the preceding paragraphs in her entirety, as if fully rewritten herein.

52. 12 U.S.C. § 2605(m) states, "[a]ll charges … related to force-placed insurance imposed on the borrower by or through the servicer shall be bona fide and reasonable."

53. 12 C.F.R. § 1024.37(a)(1) defines "force-placed insurance" as "hazard insurance obtained by a servicer on behalf of the owner or assignee of a mortgage loan that insures the property securing such loan."

54. 12 C.F.R. § 1024.37(b) provides, "[a] servicer may not assess on a borrower a premium charge or fee related to force-placed insurance unless the servicer has a reasonable basis to believe that the borrower has failed to comply with the mortgage loan contract's requirement to maintain hazard insurance."

55. Comment 2 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(b)(5), entitled "[u]nreasonable basis", declares that "a servicer lacks a reasonable basis to impose fees that are not bona fide, such as… iv. A charge for force-placed insurance in a circumstance not permitted by § 1024.37."

56. Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.37(b) continues, "Information about a borrower's hazard insurance received by a servicer from the borrower … may provide a servicer with a reasonable basis to believe that the borrower has either complied with or failed to comply with the loan contract's requirement to maintain hazard insurance."

57. PHH lacked a reasonable basis to believe that Ms. Kimelman failed to comply with the mortgage loan contract's requirement to maintain hazard insurance as Ms. Kimelman had never defaulted on her hazard insurance obligations.  See "**Exhibit F".**

58. Despite Ms. Kimelman' maintenance of homeowner's insurance, PHH imposed and maintained forced-placed insurance policies on the Home and Loan.

59. PHH's actions are part of a pattern and practice of behavior, as allege and detailed herein, in conscious disregard for Ms. Kimelman's rights.

60. As a result of PHH's actions, PHH is liable to Ms. Kimelman for actual damages, as described, supra, as well as for statutory damages, costs, and attorneys' fees.

**WHEREFORE**, Plaintiff pray for the entry of judgment in his favor and against Defendant PHH as follows:

A.     Finding that PHH has committed multiple violations of 12 C.F.R. § 1024.37(b);

B.     Awarding Plaintiff statutory damages for each violation of 12 C.F.R. § 1024.37(b);

C.     Awarding Plaintiff actual damages in an amount to be determined at trial;

D.     Awarding Plaintiff costs and reasonable attorney fees; and,

E.     Granting Plaintiff such other and further relief this Court may deem just and proper.


## COUNT TWO: VIOLATIONS OF 12 C.F.R. § 1024.34(a) AND 12 C.F.R. § 1024.17

61. Plaintiff restates and incorporates all of her statements and allegations contained in the preceding paragraphs in her entirety, as if fully rewritten herein.

62. 12 C.F.R. § 1024.34(a) states, "If the terms of a mortgage loan require the borrower to make payments to the servicer of the mortgage loan for deposit into an escrow account to pay taxes, insurance premiums, and other charges for the mortgaged property, the servicer shall make payments from the escrow account in a timely manner, that is, on or before the deadline to avoid a penalty, as governed by the requirements in § 1024.17(k)."

63. 12 C.F.R. § 1024.17(k)(5)(i) provides, "…with respect to a borrower whose mortgage payment is more than 30 days overdue, but who has established an escrow account for the payment for hazard insurance … a servicer may not purchase force-placed insurance … unless a servicer is unable to disburse funds from the borrower's escrow account to ensure that the borrower's hazard insurance premium charges are paid in a timely manner."

64. PHH is aware that Ms. Kimelman has maintained insurance coverage on the Home.

65. Since Ms. Kimelman maintained insurance coverage prior to and continued to privately pay for insurance until present, there existed no reason for PHH to impose force-placed insurance.

66. PHH's actions are believed to be a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

67. As a result of PHH's actions, PHH is liable to Plaintiff for actual damages, statutory damages, costs, and attorney fees pursuant to 12 U.S.C. § 2605(f).

**WHEREFORE**, Plaintiff prays for the entry of judgment in his favor and against Defendant PHH as follows:

A.      Finding that PHH has violated of 12 C.F.R. § 1024.34(a) and 12 C.F.R. § 1024.17;

B.      Awarding Plaintiff statutory damages for each violation of 12 C.F.R. § 1024.34(a) and 12 C.F.R. § 1024.17;

C.      Awarding Plaintiff actual damages in an amount to be determined at trial;

D.      Awarding Plaintiff costs and reasonable attorney fees; and,

E.      Granting Plaintiff such other and further relief this Court may deem just and proper.

12

## COUNT THREE: MULTIPLE VIOLATIONS OF 12 C.F.R. §1024.35

68. Plaintiff restates and incorporates all of her statements and allegations contained in the preceding paragraphs in her entirety, as if fully rewritten herein.

69. 12 C.F.R. § 1024.35(a) provides that a "servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.

70. Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

71. 12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or "[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance."

72. The NOE meets the requirements of a notice of error as defined by 12 C.F.R.
§1024.35(a).  **See "Exhibit B".**

73. Ms. Kimelman, by her counsel, sent the NOE on or around June 22, 2016.

74. Ms. Kimelman alleged by and through the NOE that PHH never should have charged Ms.
Kimelman for property taxes as she had always paid her taxes privately before any
payment was made by PHH.

75. PHH received the NOE on or around June 28 2016.  **See "Exhibit C".**

76. PHH thereafter sent the NOE Response to Ms. Kimelman.  **See "Exhibit D"**.

77. PHH, by and through NOE Response, again alleged "[a]s previously advised, the
borrower's taxes became delinquent and the property was ready to go to tax sale.  In
order to save our interest in the borrower's property, we were forced to pay the property
taxes." **See "Exhibit D"**.

78. As PHH failed to correct the error, it is clear that the NOE Response did not comply with
12 C.F.R. §1024.35(e)(1)(i)(A).

79. It is clear that PHH did not perform a reasonable investigation into the errors Ms.
Kimelman noticed by and through the NOE as any simple, cursory review of the county
tax payment records would have clearly revealed the fact that the only tax payments
received for the Home was from "Sandra Kimelman.".  **See "Exhibit E".**

80. PHH's actions are believed to be a pattern and practice of behavior in conscious disregard
of Ms. Kimelman' rights.

81. PHH is liable to Ms. Kimelman for actual damages, statutory damages, and reasonable
attorney's fees and costs.

**WHEREFORE**, Plaintiff prays for the entry of judgment in her favor and against Defendant PHH as follows:

A.      Finding that PHH has committed multiple violations of 12 C.F.R. § 1024.35;

B.      Awarding Plaintiff statutory damages for each violation of 12 C.F.R. § 1024.35;

C.      Awarding Plaintiff actual damages in an amount to be determined at trial;

D.      Awarding Plaintiff costs and reasonable attorney fees; and,

E.      Granting Plaintiff such other and further relief this Court may deem just and proper.

## COUNT FOUR: AGAINST PHH VIOLATION OF 12 C.F.R. 1024.35 (b) (2)

82. Plaintiff restates and incorporates all of her statements and allegations contained in the preceding paragraphs in her entirety, as if fully rewritten herein.

83. Pursuant to 12 C.F.R. 1024.35 (b)(2) of Regulation X, a servicer such as PHH is deemed to have committed a RESPA violation and is a "covered error" if it commits the following errors and after notice of same and does not correct the error, to wit:

 "(b)(2) For purposes of this section, the term "error" refers to the following categories of covered errors:

"Failure to apply an accepted payment to principal, interest, escrow, or charges under the terms of the mortgage loan and applicable law."

84. Ms. Kimelman sent her monthly payment which was due pursuant to the terms of the repayment Agreement which was intended according to the Agreement to be applied to principal and interest only.

85. PHH unilaterally breached the Agreement and applied the April 2014 payment instead to escrow and in its own words "erroneously deemed the repayment plan broken".

86. Further evidence of PHH's failure to properly credit Ms. Kimelman' s mortgage account was also admitted by PHH who returned payment was received by virtue of the fact that it admitted to returning $4,468.85 which was erroneously and wrongfully placed in a suspense account and NOT applied to Ms. Kimelman' s loan account as it should have been in accordance with the Repayment agreement entered into between PHH and Plaintiff.

87. PHH erroneously, willfully and admittedly misapplied a properly made payment and as a result committed multiple violations of RESPA.

88. As a result, Plaintiff was unable to make her regularly scheduled payments resulting ultimately in the imposition of a payment that is $650.00 greater than her original mortgage payment can only be characterized the imposition of improper fees due to the willful and tortious actions of PHH.

89. But for PHH's erroneous cancellation of Plaintiff's repayment plan, Ms. Kimelman would not be forced to pay an additional $650.00 in what can only be deemed improper fees which were inculcated into her loan modification.   Thus, PHH clearly violated Regulation X when it misapplied Ms. Kimelman' s April 2014 payment and credited it to an escrow payment instead of the agreed upon credit to principal and interest.

90. Furthermore, Ms. Kimelman made all of the tax payments during that time period further compounding PHH's errors especially considering PHH recorded a $28,000.00 escrow shortage when in fact PHH did not expend any monies toward Ms. Kimelman' s taxes ultimately as clearly delineated from the County's tax records.

91. PHH's failure to properly credit the April 2014 payment is the direct and proximate cause of all of the fees, charges and penalties that PHH has accrued to Ms. Kimelman' s mortgage loan resulting in a payment that is $650.00 greater than the payments under the original loan agreement.

92. PHH was apprised of its errors and despite an opportunity to correct the errors, claimed that no error was made and continued to willfully violate Regulation X on a monthly basis, despite clear evidence that violations of Regulation X were being committed.

93. As a result of PHH's willful actions in clear violation of Regulation X, Ms. Kimelman was left with little choice but to retain counsel to defend PHH's frivolous and erroneous foreclosure action, to investigate PHH's violations paying legal fees and additionally has had significant interest and fees accrue to her mortgage account resulting in a $650.00 a month increase in her mortgage payments without any reasonable basis to have accrued aside from PHH's RESPA violations.

WHEREFORE, Plaintiff prays for the entry of judgment in her favor and against Defendant PHH as follows:

A.     Finding that PHH has committed multiple violations of 12 C.F.R. §1024.35 (b)(2);

B.     Awarding Plaintiff statutory damages for each violation of 12 C.F.R. §1024.35 (b)(2);

C.     Awarding Plaintiff actual damages in an amount to be determined at trial;

D.     Awarding Plaintiff costs and reasonable attorney fees; and,

E.     Granting Plaintiff such other and further relief this Court may deem just and proper.


**COUNT FIVE:  VIOLATIONS OF 12 C.F.R. §1026.36 (c) (1)(i)**

17

94. Plaintiff restates and incorporates all of her statements and allegations contained in the preceding paragraphs in her entirety, as if fully rewritten herein.

95. Pursuant to 12 C.F.R. 1026.36 (c)(1)(i) of regulation Z, a servicer such as PHH is prohibited from taking the following actions:

> "In connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall:"

> "Fail to credit a payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency, or except as provided in paragraph (c)(2) of this section;"

96. Ms. Kimelman sent her monthly payment which was due pursuant to the terms her repayment Agreement in April 2014.

97. PHH admitted that it had failed to credit Ms. Kimleman's account on the day the payment was received by virtue of the fact that it admitted to returning $4,468.85 which was erroneously and wrongfully placed in a suspense account and NOT applied to Ms. Kimelman' s loan account as it should have been in accordance with the Repayment agreement entered into between PHH and Plaintiff.

98. Plaintiff was unable to make her regularly scheduled payments resulting ultimately in the imposition of a payment that is $650.00 greater than her payment can only be characterized as the imposition of improper fees due to the willful and tortious actions of PHH.

99. But for PHH's erroneous cancellation of Plaintiff's repayment plan, Ms. Kimelman would not be forced to pay an additional $650.00 in what can only be deemed improper fees which were inculcated into her loan modification.

100.    Thus, PHH clearly violated Regulation Z when it failed to properly credit Ms. Kimelman' s April 2014 payment.

101.    PHH's failure to properly credit the April 2014 payment is the direct and proximate cause of all of the fees, charges and penalties that PHH has accrued to Ms. Kimelman' s mortgage loan resulting in a payment that is $650.00 greater than the payments under the original loan agreement.

102.    PHH was apprised of its errors and despite an opportunity to correct the errors, claimed that no error was made and continued to willfully violate Regulation Z on a monthly basis, despite clear evidence that violations of Regulation Z were being committed.

103.    As a result of PHH's willful actions in clear violation of Regulation Z, Ms. Kimelman was left with little choice but to retain counsel to defend PHH's frivolous and erroneous foreclosure action, to investigate PHH's violations paying legal fees and additionally has had significant interest and fees accrue to her mortgage account resulting in a $650.00 a month increase in her mortgage payments without any reasonable basis to have accrued aside from PHH's RESPA violations.

**WHEREFORE**, Plaintiff prays for the entry of judgment in her favor and against Defendant PHH as follows:

A.    Finding that PHH has committed multiple violations of 12 C.F.R. §1026.36 (c) (1)(i);

B.    Awarding Plaintiff statutory damages for each violation of 12 C.F.R. §1026.36 (c) (1)(i);

C.    Awarding Plaintiff actual damages in an amount to be determined at trial;

D.    Awarding Plaintiff costs and reasonable attorney fees; and,

E.      Granting Plaintiff such other and further relief this Court may deem just and proper.


### COUNT SIX: AGAINST PHH VIOLATION OF 12 C.F.R. 1024.35 (b) (3)

104.        Plaintiff restates and incorporates all of her statements and allegations contained

in the preceding paragraphs in her entirety, as if fully rewritten herein.

105.        Pursuant to 12 C.F.R. 1024.35 (b)(3) of Regulation X, a servicer such as PHH is

deemed to have committed a RESPA violation and is a "covered error" if it commits the

following errors and after notice of same does not correct the error to wit:

"(b)(3)For purposes of this section, the term "error" refers to the following categories of
covered errors: Failure to credit a payment to a borrower's mortgage loan account as of
the date of receipt in violation of 12 CFR 1026.36(c)(1)."


106.        Ms. Kimelman sent her monthly payment which was due pursuant to the terms

her repayment Agreement in April 2014.

107.        PHH erroneously, willfully and admittedly misapplied a properly made payment

and as a result committed multiple violations of RESPA.

108.        As a result, Plaintiff was unable to make her regularly scheduled payments

resulting ultimately in the imposition of a payment that is $650.00 greater than her

original mortgage payment can only be characterized the imposition of improper fees due

to the willful and tortious actions of PHH.

109.        But for PHH's erroneous cancellation of Plaintiff's repayment plan, Ms.

Kimelman would not be forced to pay an additional $650.00 in what can only be deemed

improper fees which were inculcated into her loan modification.

110.     Thus, PHH clearly violated Regulation X when it misapplied Ms. Kimelman's April 2014 payment and credited it to an escrow payment instead of the agreed upon credit to principal and interest.

111.     Furthermore, Ms. Kimelman made all of the tax payments during that time period further compounding PHH's errors especially considering PHH recorded a $28,000.00 escrow shortage when in fact PHH did not expend any monies toward Ms. Kimelman's taxes ultimately as clearly delineated from the County's tax records.

112.     PHH's failure to properly credit the April 2014 payment is the direct and proximate cause of all of the fees, charges and penalties that PHH has accrued to Ms. Kimelman's mortgage loan resulting in a payment that is $650.00 greater than the payments under the original loan agreement.

113.     PHH was apprised of its errors and despite an opportunity to correct the errors, claimed that no error was made and continued to willfully violate Regulation X on a monthly basis, despite clear evidence that violations of Regulation X were being committed.

114.     As a result of PHH's willful actions in clear violation of Regulation X,

115.     Ms. Kimelman was left with little choice but to retain counsel to defend PHH's frivolous and erroneous foreclosure action, to investigate PHH's violations paying legal fees and additionally has had significant interest and fees accrue to her mortgage account resulting in a $650.00 a month increase in her mortgage payments without any reasonable basis to have accrued aside from PHH's RESPA violations.

**WHEREFORE**, Plaintiff prays for the entry of judgment in her favor and against Defendant PHH as follows:

A.      Finding that PHH has committed multiple violations of 12 C.F.R. §1024.35 (b)(3);

B.      Awarding Plaintiff statutory damages for each violation of 12 C.F.R. §1024.35 (b)(3);

C.      Awarding Plaintiff actual damages in an amount to be determined at trial;

D.      Awarding Plaintiff costs and reasonable attorney fees; and,

E.      Granting Plaintiff such other and further relief this Court may deem just and proper.


## COUNT SEVEN: AGAINST PHH FOR MULTIPLE VIOLATIONS OF 12 C.F.R. §1024.35(b) (5)

116.      Plaintiff restates and incorporates all of her statements and allegations contained in the preceding paragraphs in her entirety, as if fully rewritten herein.

117.      12 C.F.R. §1024.35(b)(5) provides in relevant part that in the event a servicer makes an error. The CFPB defined the term "reasonable basis" for purposes of interpreting § 1024.35(b)(5), a servicer lacks a reasonable basis to impose fees that are not bona fide, such as:

"●A charge imposed by a service provider for a service that was not late;

●A default property management fee for borrowers that are not in a delinquency status that would justify the charge; or

●A charge for force-placed insurance in a circumstance not permitted by § 1024.37"

118.      Ms. Kimelman has been forced to pay forced-place insurance even though she

has been paying for her own insurance policy and has shown proof of same without lapse to PHH.

119.    PHH wrongfully added fees for forced place insurance to her loan which, upon information and belief, also resulted in fees and penalties being added to her mortgage loan account.

120.    Additionally, PHH admitted that it had erroneously deemed the Kimelman's repayment plan broken and while they claim that all fees were removed, the servicing mistakes with respect to crediting the account, returning over four thousand ($4,000.00) dollars to the Kimelman's that was wrongfully and willfully placed into a suspense account, the inclusion of over $28,000.00 dollars in negative escrow charges despite clear evidence that at the time the charges were added no such basis for the negative escrow existed (*See* **Exhibit "D"** County Tax Records reflecting Tax Payments which were made solely by the Kimelman's), clearly demonstrate multiple fees, charges and penalties that the PHH had no reasonable basis to the add to Ms. Kimelman's loan account.

121.    The net result of the addition of all of the addition fees charges and penalties which were not removed by PHH resulted in a mortgage payment that is $650.00 per month greater than the original loan payment amount and extends Ms. Kimelman's last payment date by years all due to PHH's willful multiple violations of RESPA's Regulation X.

122.    In the instant matter, each and every fee imposed on Ms. Kimelman's mortgage account was a fee that the servicer lacked any reasonable basis to impose upon the

borrower because every fee, costs and penalty stems from PHH's initial willful error and

is therefore not a "bonafide fee imposed".

123.　　As a result of PHH's willful and illegal actions, PHH is liable to Ms. Kimelman

for actual damages, statutory damages, costs, and attorney's fees.

124.　　Ms. Kimelman sustained actual damages in the form of legal fees and expenses

paid to investigate claims for RESPA, for the erroneous fees, penalties and costs which

were added to her mortgage account without any basis and for other violations by PHH

and also non-pecuniary actual damages in the form of emotional distress.


**WHEREFORE**, Plaintiff prays for the entry of judgment in her favor and against

Defendant PHH as follows:

A.　　Finding that PHH has committed multiple violations of 12 C.F.R. §1024.35 (b)(5);

B.　　Awarding Plaintiff statutory damages for each violation of 12 C.F.R. §1024.35 (b)(5);

C.　　Awarding Plaintiff actual damages in an amount to be determined at trial;

D.　　Awarding Plaintiff costs and reasonable attorney fees; and,

E.　　Granting Plaintiff such other and further relief this Court may deem just and proper.


**COUNT EIGHT: AGAINST PHH VIOLATION OF 12 C.F.R. §1024.35(b) (6)**

125.　　Plaintiff restates and incorporates all of her statements and allegations contained

in the preceding paragraphs in her entirety, as if fully rewritten herein.

126.　　12 C.F.R. §1024.35(b)(6) provides in relevant part that in the event a servicer

makes an error for:

24

"Failure to provide an accurate payoff balance amount upon a borrower's request in violation of section 12 C.F.R. 1026.36(c) (3)"

127.     A request for information was sent to PHH requesting a copy of an accurate payoff letter and PHH provided same on April 5, 2016.

128.     The PHH payoff quote reflected a negative escrow balance which upon information and belief included the $28,000 escrow balance that PHH had no basis to include.

129.     Moreover, there were various late charges and corporate advances included in the payoff letter that only became necessary due to PHH's tortious and willful actions in failing to properly service the Plaintiff's mortgage loan.

130.     Despite a notice of error sent to PHH by Ms. Kimelman through her counsel alerting PHH to their numerous errors, PHH never corrected the mortgage balance from the date of receipt of the notice of error as PHH's response to Ms. Kimelman's notice of error indicates that PHH found no error with the plaintiff's mortgage account.

131.     PHH violated and continues to violate 12 C.F.R. §1024.35(b) (6) for failure to provide an accurate payoff balance to Ms. Kimelman from June 22, 2016 to present and continuing.

132.     As a result of PHH's actions, PHH is liable to Ms. Kimelman for actual damages, statutory damages, costs, and attorney's fees.

133.     Ms. Kimelman sustained actual damages in the form of attorney's fees and expenses paid to investigate claims for RESPA and for other violations by PHH.

**WHEREFORE**, Plaintiff prays for the entry of judgment in her favor and against Defendant PHH as follows:

25

A.   Finding that PHH has committed multiple violations of 12 C.F.R. §1024.35 (b)(6);

B.   Awarding Plaintiff statutory damages for each violation of 12 C.F.R. §1024.35(b)(6);

C.  Awarding Plaintiff actual damages in an amount to be determined at trial;

D.  Awarding Plaintiff costs and reasonable attorney fees; and,

E.   Granting Plaintiff such other and further relief this Court may deem just and proper.

## COUNT NINE: AGAINST PHH VIOLATION OF 12 C.F.R. §1026.36(c) (3)

134.      Plaintiff restates and incorporates all of her statements and allegations contained in the preceding paragraphs in her entirety, as if fully rewritten herein.

135.      12 C.F.R. §1026.36(C)(3) provides in relevant part that:

"In connection with a consumer credit transaction secured by a consumer's dwelling, a creditor, assignee or servicer, as applicable, must provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specified date"

136.       Ms. Kimelman's request for information was sent to PHH requesting a copy of an accurate payoff letter and on April 5, 2016, PHH provided same.

137.      The PHH payoff quote reflected a negative escrow balance which upon information and belief included the $28,000.00 escrow balance that PHH had no basis to include.

138.      Moreover, there were various late charges and corporate advances included in the payoff letter that only became necessary due to PHH's tortious and willful actions in failing to properly service the Plaintiff's mortgage loan.

26

139.      Despite a notice of error sent to PHH by Ms. Kimelman through her counsel alerting PHH to their numerous errors, PHH never corrected the mortgage balance from the date of receipt of the notice of error as PHH's response to Ms. Kimelman's notice of error indicates that PHH found no error with the plaintiff's mortgage account.

140.      PHH violated and continues to violate 12 C.F.R. §1026.36(c) (3) for failure to provide an accurate payoff balance to Ms. Kimelman from June 22, 2016 to present and continuing.

141.      As a result of PHH's actions, PHH is liable to Ms. Kimelman for actual damages, statutory damages, costs, and attorney's fees.

142.      Ms. Kimelman sustained actual damages in the form of attorney's fees and expenses paid to investigate claims for RESPA and for other violations by PHH.

**WHEREFORE**, Plaintiff prays for the entry of judgment in her favor and against Defendant PHH as follows:

A.  Finding that PHH has committed multiple violations of 12 C.F.R. §1026.36 (c)(3);

B.  Awarding Plaintiff statutory damages for each violation of 12 C.F.R. §1026.36(c)(3);

C.  Awarding Plaintiff actual damages in an amount to be determined at trial;

D.  Awarding Plaintiff costs and reasonable attorney fees; and,

E.  Granting Plaintiff such other and further relief this Court may deem just and proper.

## COUNT TEN: BREACH OF CONTRACT

143.      Plaintiff restates and incorporates all of her statements and allegations contained in the preceding paragraphs in her entirety, as if fully rewritten herein.

27

144.     PHH offered the Plan to Ms. Kimelman on or around February 2014.

145.     The Plan provided that in order for Ms. Kimelman to accept PHH's offer, they were required to make six (6) payments totaling $11,043.97, or five (5) payments for $1,840.66 and one (1) payment of $1,840.67 from the period of March 25, 2014 to August 25, 2014.

146.     Ms. Kimelman accepted the Plan and performed on her obligations under the terms of the Plan by sending in the March 2014 through August 2014 payments. See **"Exhibit A".**

147.     PHH, by their own admission, then breached the agreement by erroneously creating an escrow shortage and recording the repayment plan as broken.

148.     As a result of PHH's actions, Ms. Kimelman demands judgment awarding: compensatory damages; all such other damages as allowed by law; costs of suit; attorney's fees; and granting such other relief as this Court may deem equitable and just.

## COUNT ELEVEN: AGAINST PHHVIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349

149.     Plaintiff restates and incorporates all of her statements and allegations contained in the preceding paragraphs in her entirety, as if fully rewritten herein.

150.     The plaintiff is a "person" within the meaning of N.Y. Gen. Bus. Law § 349(h). N.Y. Gen. Bus. Law § 349(a) makes unlawful deceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in New York State.

151.     PHH's intentional and willful conduct complained of herein consisted of deceptive acts and practices in the form of misrepresentations which consisted of charging Plaintiff fees which were actually not owed and deceptively and erroneously holding Plaintiff in breach of a contract that was actually and admittedly breached by PHH during its conduct of business in New York in violation of N.Y. Gen. Bus. Law § 349(a).

152.     PHH continues to be deceptive adding fees and a negative escrow amount into a loan modification agreement when Plaintiff has proof that the escrow amounts PHH claims to have paid in taxes in the form of real estate taxes were actually paid by Plaintiff.

153.     PHH directly and proximately caused damages and injuries to the plaintiff including actual damages, including but not limited to, attorney fees to research the RESPA violations and fees, interest and costs added to Ms. Kimelman's mortgage loan account without any basis.

154.     As a result of PHH's actions, PHH is liable for actual damages, statutory damages, **punitive damages**, costs, and attorneys' fees pursuant to N.Y. Gen. Bus. Law. §349.

## CONCLUSION

155.     Defendant PHH's erroneous payment applications and miscalculations are consistent with their continuing poor mortgage servicing practices and non-compliance with the RESPA regulations contained in 12 CFR §1024.1 *et seq*. Defendant's conduct is

part of a pattern and practice and, pursuant to 12 USC §2605 (f)(1)(B), Plaintiff are entitled to statutory penalties for each and every violation of the regulations contained in 12 C.F.R. §1024, *et seq*.

156.     As a direct and proximate result of Defendant's conduct and the distinct and ongoing violations above enumerated, Plaintiff suffered actual damage in the form of an excess of $650.00 increase in monthly principal and interest payment, attorneys' fees incurred in preparing and submitting a loss mitigation application, attorneys' fees and postage incurred in preparing and submitting the NOE, improper tax and insurance charges, and attorney fees to investigate and prepare this suit and have suffered further damage to her already weakened credit profile. Moreover, Ms. Kimelman have suffered extreme emotional distress, embarrassment and fear caused directly by the prospect of losing the Home despite her complete compliance with all aspects and obligations of the Loan and the Plan.

## **JURY DEMAND**

157.     Plaintiffs hereby request a trial by jury on all issues, with the maximum number of jurors permitted by law.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** Plaintiff prays that this Court enter its order granting judgment against PHH for the following:

A.  For Plaintiff' actual damages, costs, and reasonable attorney fees as to each of Counts One, Two, Three, Four, Five, Six, Seven Eight and Nine;

B.  For statutory damages of up to Two Thousand Dollars ($2,000.00) as to each of the violations of Regulation X as contained in Counts One, Two, Three, Four, Six Seven and Eight; and,

C.  For statutory damages of up to Four Thousand Dollars ($4,000.00) as to each of the violations of Regulation Z as contained in Counts Five and Nine;

D.  For Plaintiff' actual damages, costs, for statutory damages and for punitive damages as to count Eleven; and

E.  Such other relief which this Court may deem appropriate.

Dated:  Woodbury, New York
       July 5, 2017

                        Respectfully submitted,

                        <u>/s/ Darren Aronow</u>
                        Darren Aronow
                        ARONOW LAW PC
                        20 Crossways Park Drive, North Suite 210
                        Woodbury, New York 11797
                        Tel. (516) 762-6700
                        Fax. (516) 303-0066